Filed 3/28/19; Certified for Publication 4/4/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| FRIENDS OF SPRING STREET, | C086563 |
| Plaintiff and Appellant, | (Super. Ct. No. CU15080911) |
| v. | |
| NEVADA CITY, | |
| Defendant and Respondent; | |
| MOLLIE POE et al., | |
| Real Parties in Interest and Respondents. | |

This attorney fees and costs case follows from our opinion in *Friends of Spring Street v. Nevada City* (Mar. 10, 2017, C081195) [nonpub. opn.] (*Friends I*). An association (plaintiff Friends of Spring Street) filed a petition for writ of mandate and complaint for declaratory and injunctive relief in superior court, challenging a determination by defendant Nevada City (the City) that real parties in interest Mollie Poe and Declan Hickey (collectively Real Parties) had the right to resume operation of a bed

1

and breakfast facility in a residential district of the City despite the fact that, years earlier, voters had passed an initiative measure repealing the provisions in the City's municipal code allowing such facilities. Plaintiff also challenged a 2015 City ordinance relating to the discontinuance of nonconforming uses subject to conditional use permits. The trial court upheld the City's ruling with respect to the bed and breakfast and upheld the 2015 ordinance. (*Friends I*.) Plaintiff appealed.

In *Friends I*, "we conclude[d] that while the trial court did not err in upholding the 2015 ordinance, the court did err in upholding the [C]ity's ruling with respect to the bed and breakfast." (*Friends I*, *supra*, C081195.) On remand, the trial court vacated its prior decision on the bed and breakfast issue and entered judgment in favor of plaintiff on that issue with respect to its petition for writ of mandate. The trial court further directed the City to file a return to the writ, indicating it had set aside its challenged decision. The City complied.

Plaintiff moved for costs under Code of Civil Procedure[1] section 1032 and attorney fees under section 1021.5; the City and Real Parties opposed. The trial court granted the City's and Real Parties' motions to strike plaintiff's memorandum of costs and denied plaintiff's motion for attorney fees. Plaintiff appeals.

We reverse and remand for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

In 1984, the City passed an initiative by a vote of 726 to 356 to "permit[] the establishment of Bed and Breakfast Guest Facilities within residential and commercial zones in the City under reasonable conditions." (*Friends I*, *supra*, C081195.) The City thereafter adopted a new zoning ordinance (codified as Nevada City Mun. Code, § 17.04.010 et seq.) implementing the initiative, including provisions regarding

---

[1] Undesignated section references are to the Code of Civil Procedure unless otherwise specified.

2

conditional use permits[2] and discontinuances of nonconforming uses. (*Friends I*, *supra*, C081195.) The zoning ordinance contained a provision that " '[i]f a non-conforming use is discontinued for a period of one (1) year, then all rights regarding the non-conforming use shall be terminated and the existing zoning district regulations shall apply to any further use of the property.' " (*Ibid*.)

"In 1991, Juneus and Jan Kendall obtained a conditional use permit to operate a bed and breakfast at 534 Spring Street (referred to as Kendall House), which is in a [single family residential] zone." (*Friends I*, *supra*, C081195.)

In 1994, the City passed an initiative known as Measure G by a vote of 684 to 642. (*Friends I*, *supra*, C081195.) "The question posed by Measure G was this: '[S]hall Section 17.72.070 of the Nevada City Municipal Code which currently allows Bed & Breakfast guest facilities in residential and non-commercial zones be repealed and the Nevada City General Plan amended accordingly such that Policy No. 6 under the heading of 'Public Service/Fiscal' be deleted along with any other references in the General Plan authorizing the establishment of Bed & Breakfast guest facilities?' " (*Ibid*.)

The Kendalls continued to operate Kendall House as a bed and breakfast until 2002, "although they continued to renew and pay for a business license for the property" thereafter. (*Friends I*, *supra*, C081195.) The Kendalls sold the property in 2004, and the buyers (who used the property as a residence while paying for and maintaining the business license) later sold the property to Real Parties in 2013. (*Ibid.*)

In 2014, Real Parties sought to recommence the conditional use permit to operate the Kendall House as a bed and breakfast. (*Friends I*, *supra*, C081195.) The City's planning commission staff "framed the issue as whether, following the passage of

---

[2]    A conditional use permit authorizes a land use that, under a zoning ordinance, is allowed only when certain conditions are met. (*Neighbors in Support of Appropriate Land Use v. County of Tuolumne* (2007) 157 Cal.App.4th 997, 1005-1006.)

Measure G in 1994, there had been a voluntary abandonment of the nonconforming use of the property as a bed and breakfast such that the right to use the property for that purpose was terminated." (*Ibid*.) The planning commission received at least seven letters regarding Real Parties' application prior to the hearing and, at the hearing, at least 14 people spoke on the issue. The planning commission denied the request because " 'the grandfathered rights to operate a [bed and breakfast] there as a legal nonconforming use ha[d] been terminated by discontinuance of the [bed and breakfast] use with intent to abandon that use." Real Parties appealed the decision to the city council.

"In their appeal, [Real Parties] did *not* challenge the planning commission's finding that the right to operate a bed and breakfast on the property as a nonconforming use had been lost by discontinuance accompanied by an intent to abandon that use. Instead, they argued for the first time that operation of a bed and breakfast at Kendall House was *never* a nonconforming use because section 17.24.040 of the municipal code, through its reference to section 17.20.040 of the code, still provided that a bed and breakfast inn was a permitted conditional use in the [single family residential] zone. Thus, they contended the conditional use permit issued for Kendall House in 1991 was 'existing and fully valid' because the business license fee had been paid ever since." (*Friends I*, *supra*, C081195.)

The city council received at least nine letters regarding Real Parties' appeal prior to the hearing and, at the hearing, at least 14 people spoke on the issue. The city council granted Real Parties' appeal and vacated the planning commission's decision. In its resolution, the city council explained "the subject matter is of importance to the public interest in the effective enforcement of city zoning laws" and found "[t]he preponderance of the weight of the evidence considered by the Council is that Measure G was intended by the voters to limit *new* bed and breakfast inns in the [single family residential] zone. Measure G did not address the manner of continuation or termination of *existing* bed and

4

breakfast inns." (*Friends I*, *supra*, C081195.) The city council also concluded Real Parties were entitled to rely on the municipal code sections that existed when they submitted their application because the code sections "could not 'by implication be voided or avoided.' " (*Ibid.*)

"In January 2015, plaintiff commenced the present action by filing a petition for writ of mandate and complaint for declaratory and injunctive relief in the superior court, seeking to require the [C]ity to set aside its decision granting [Real Parties'] appeal of the planning commission's decision." (*Friends I, supra*, C081195.) In that regard, plaintiff brought four causes of action: (1) "Violation of Citizen Initiative, Measure G: Code Civ. Proc. § 1094.5"; (2) "Conflict of Interest: Government Code § 91003"; (3) "Failure to Implement Measure G: Code Civ. Proc. § 1085"; and (4) "Declaratory Relief: Code Civ. Proc. § 1060."

Plaintiff alleged: "Measure G was passed by local citizens based on concerns that bed and breakfast facility operations -- a commercial use under the code -- are incompatible with residential uses, with the potential to adversely affect the integrity of local residential neighborhoods in the City, as has occurred in other jurisdictions such as Napa or Mendocino Counties. Measure G did not abolish pre-existing [bed and breakfasts] in residential areas, but did render such uses non-conforming. Such non-conforming uses may be abandoned due to continued non-use."

Plaintiff sought orders "directing the City to set aside its decision and to proceed in accordance with applicable law" and compelling the City "to implement Measure G by revising its General Plan and updating its zoning code in accordance with the intent of the voters," and a declaration "that the City's final resolution determining that Measure G did not affect the zoning conformity of pre-existing [bed and breakfasts] is contrary to law." Finally, plaintiff "s[ought] injunctive relief for the Court to set aside the City's action in granting Real Part[ie]s' appeal due to the conflict of interest established in the proceedings below by one of the City Council members, Evan Phelps, based on the

5

council member's financial interest in bed and breakfast operations located in the City that are affected by the City Council's action."[3]

"A week [after plaintiff filed this action], the city council adopted an urgency ordinance that, among other things, amended [a section] of the municipal code with relation to the discontinuance of bed and breakfast guest facilities.  Soon thereafter, plaintiff filed an amended petition and complaint in the superior court, adding a challenge to the urgency ordinance."  (*Friends I, supra*, C081195.)

"In February 2015, the city council adopted a resolution affirming that the urgency ordinance was exempt from review under the California Environmental Quality Act (CEQA).  Then, in March 2015, the city council adopted a nonurgency ordinance that superseded the urgency ordinance from January."  (*Friends I, supra*, C081195.)  "As relevant [to this action], the nonurgency ordinance amended section 17.76.040 of the municipal code to provide as follows:

" '(a) If a nonconforming use is discontinued for a period of one year, then all rights regarding the nonconforming use shall be terminated and the existing zoning district regulations shall apply to any further use of the property.

" '(b) Any determination of discontinuance of a use allowed by a conditional use permit, pursuant to (a) above, shall proceed in accordance with section 17.88.020(F) of this Code, and shall include a review of all relevant evidence.'

"Subdivision (F) of section 17.88.020 of the city's municipal code provides as follows:

" 'In any case where the conditions of a conditional use permit have not been or are not being complied with, the commission shall give the permittee notice of intention

---

[3]     Plaintiff's claim for injunctive relief related only to the alleged conflict of interest and was not an issue in the appeal.  Accordingly, we did not address that aspect of plaintiff's suit further.  (*Friends I*, *supra*, C081195.)

6

to revoke such permit at least ten (10) days prior to a commission hearing thereon.  After the conclusion of the hearing, the commission may revoke such a permit.' " (*Friends I*, *supra*, C081195.)

"In April 2015, plaintiff filed a second amended petition and complaint in the superior court, adding a challenge to the nonurgency ordinance in place of the previous challenge to the urgency ordinance.  Plaintiff alleged that the amendment to section 17.76.040 'require[s] the City to utilize the permit revocation criteria of Code Section 17.88.020(F) before it may determine that a non-conforming use has been discontinued.  This amendment violates state law, which requires that zoning be uniform and not permit uses that are not listed in the zoning code, except in situations where a variance has been issued. . . .  The amendment also improperly confers vested rights on landowners possessing [conditional use permits] for uses that no longer comply with applicable zoning, thereby elevating the rights of these non-conforming uses to the status of permitted uses under the Code.'  Plaintiff also alleged that the city violated CEQA by approving the nonurgency ordinance without any environmental review." (*Friends I*, *supra*, C081195.)

"Regarding [Real Parties'] appeal [to the city council], the [trial] court concluded '[t]he City Council was correct in its legal analysis.  The old [bed and breakfast] was never a legal non-conforming use and . . . it was still subject to its Conditional Use Permit.'  Regarding the nonurgency ordinance, the court concluded that the . . . municipal code did not require the city to use the permit revocation criteria . . . in determining whether the right to continue a nonconforming use has been lost by discontinuance." (*Friends I*, *supra*, C081195.)  "Based on these conclusions, the court denied plaintiff's writ petition and granted plaintiff's request for declaratory relief, declaring that 'the vested rights of . . . landowners [with conditional use permits] require a permit revocation process before such use may be extinguished.' " (*Ibid*.)

7

On appeal, "we conclude[d] that while the trial court did not err in upholding the 2015 ordinance, the court did err in upholding the [C]ity's ruling with respect to the bed and breakfast." (*Friends I, supra*, C081195.) With respect to the bed and breakfast, the pertinent question was whether, "following the passage of Measure G, the operation of a bed and breakfast on the Kendall House property remained a *conforming* use, such that [Real Parties] were entitled to resume that use of the property as a matter of right, without regard to the rules governing nonconforming uses." (*Ibid*.) We explained "the intent of Measure G was to prohibit the establishment of new bed and breakfasts in residential zones *and* to turn existing bed and breakfasts in those zones into nonconforming uses." (*Ibid*.) Accordingly, we "conclude[d] that Measure G impliedly repealed subdivision (F) of section 17.24.040 and that bed and breakfasts existing at the passage of the measure became nonconforming uses." (*Ibid*.)

We upheld the 2015 nonurgency ordinance based on the "construction advanced by the [C]ity" that "subdivision (B) of section 17.76.040 requires only that the *procedural requirements* of subdivision (F) of section 17.88.020 -- that is, at least 10 days' notice prior to a hearing on the matter -- be applied to a determination of whether a nonconforming use has been terminated by discontinuance and does *not* require that the *substantive criteria* in the latter provision -- that is, a determination that the conditions of the conditional use permit have not been or are not being complied with -- be applied to a determination of termination by discontinuance." (*Friends I*, *supra*, C081195.) We also disposed of plaintiff's CEQA argument on the same grounds because plaintiff failed to "explain how making a determination of discontinuance subject to a hearing with prior notice could possibly have an impact on the environment." (*Friends I*, *supra*, C081195.)

We, accordingly, reversed the judgment with respect to plaintiff's petition for writ of mandate but affirmed with respect to its complaint for declaratory and injunctive relief. On remand, we directed the trial court to vacate its order denying plaintiff's petition for writ of mandate and to enter a new and different order granting plaintiff's petition to the

8

extent plaintiff sought a writ of mandate ordering the City to set aside its decision granting Real Parties' appeal of the planning commission's decision. (*Friends I*, *supra*, C081195.) We ordered each party to bear its own costs on appeal. (*Ibid.*)

On remand, the trial court vacated its prior decision denying the petition for writ of mandate and entered judgment granting the petition. The judgment states: "Following the passage of Measure G, the operation of a bed and breakfast on the Kendall House property became a nonconforming use, such that [Real Parties] were not entitled to resume that use of the property as a matter of right, without regard to the rules governing nonconforming uses. P[laintiff's] request for declaratory relief is adjudicated as follows: The right of a nonconforming [bed and breakfast] landowner to operate in accordance with a conditional use permit can only be extinguished based on a finding of discontinuance under N[evada ]C[ity] Code § 17.76.040 in accordance with the procedural requirements of N[evada ]C[ity] Code § 17.88.020F that the City hold a hearing and provide required notice at least 10 days prior to the hearing. [¶] P[laintiff's] request for injunctive relief is denied."

The trial court directed the City to "[s]et aside [its] October 22, 2014 decision granting [Real Parties'] appeal of the City's Planning Commission's denial of Real Parties' application to resume a Bed and Breakfast operation at [the Kendall House] in Nevada City" and to file a written return demonstrating compliance with the writ. The City filed a return to the writ, showing its compliance with the amended peremptory writ of mandate by the adoption of Resolution No. 2018-08, in which the City resolved to set aside its decision granting Real Parties' appeal.

Plaintiff filed a memorandum of costs, requesting $435 in filing and motion fees, $200 in service of process fees, and $3,200 for preparing the administrative record. Plaintiff also filed a separate motion for attorney fees under section 1021.5. The fees motion was supported by the declaration of Stevee Duber, a member of plaintiff association, which included as an exhibit "excerpts from the record documenting the

9

broad-based citizen opposition to the City's refusal to acknowledge and enforce the voters' intent to adopt Measure G." The City and Real Parties filed motions to strike plaintiff's memorandum of costs and oppositions to plaintiff's motion for attorney fees.

Judge Thomas Anderson granted the motion to strike plaintiff's memorandum of costs, stating: "Here, the court finds that there is no prevailing party. Petitioner did not achieve any practical result that justifies a determination that it was the prevailing party entitled to costs. Petitioner only obtained relief from the Court on one of its five causes of action. The trial court and the Court of Appeal denied any relief at all on the other four causes of action. Similar to the Court of Appeal's decision not to award costs to Petitioner on appeal, this Court determines that Petitioner is not the prevailing party entitled to costs."

Judge pro tem Angela Bradrick denied the attorney fees motion, stating: "Here, the Court finds that Petitioner was not successful in enforcing an important public right that resulted in a substantial benefit to the public or a large class of persons. Petitioner did obtain a successful interpretation and enforcement of Measure G. But, this result does not constitute a significant benefit, whether pecuniary or non-pecuniary, having been conferred on the general public or a large class of persons. [T]he mere vindication of a statutory violation is not sufficient to be considered a substantial benefit by itself."

Plaintiff appeals both the attorney fees and costs orders.

DISCUSSION

I

*Plaintiff Is Entitled To Its Costs*

"In contrast to the American rule that parties to a lawsuit ordinarily pay their own attorney fees, litigation costs have been traditionally awarded to the prevailing party. 'Costs are allowances which are authorized to reimburse the successful party to an action or proceeding and are in the nature of incidental damages to indemnify a party against the expense of successfully asserting his rights.' [Citations.] ' "The theory upon which

10

[costs] are allowed to a plaintiff is that the default of the defendant made it necessary to sue him; and to a defendant, that the plaintiff sued him without cause. Thus the party to blame pays costs to the party without fault." ' " (*DeSaulles v. Community Hospital of Monterey Peninsula* (2016) 62 Cal.4th 1140, 1147.)

Section 1032, subdivision (b) provides that, "[e]xcept as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." A "prevailing party" is defined to include "the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. If any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not . . . ." (§ 1032, subd. (a)(4).)

This case falls within the "in situations other than as specified" prong of section 1032, subdivision (a)(4). This prong of the statute " 'calls for the trial court to exercise its discretion both in determining the prevailing party and in allowing, denying, or apportioning costs. It operates as an express statutory exception to the general rule that a prevailing party is entitled to costs as a matter of right.' " (*Charton v. Harkey* (2016) 247 Cal.App.4th 730, 738.)

In these situations, "the trial court in its discretion determines the prevailing party, comparing the relief sought with that obtained, along with the parties' litigation objectives as disclosed by their pleadings, briefs, and other such sources." (*On-Line Power, Inc. v. Mazur* (2007) 149 Cal.App.4th 1079, 1087.) Thus, the trial court determines whether the party succeeded at a practical level by realizing its litigation objectives (*Wohlgemuth v. Caterpillar, Inc.* (2012) 207 Cal.App.4th 1252, 1264) and the action yielded the primary relief sought in the case (*City of Santa Maria v. Adam* (2016) 248 Cal.App.4th 504, 516).

Real Parties argue plaintiff waived any right to costs under section 1032 because plaintiff failed to obtain a court order deeming it a prevailing party before filing its memorandum of costs (relying on a statement in Rutter Group's Civil Trials and Evidence Guide) and, "since it waited until the fifteenth day after entry of judgment, any application to the court [for an order deeming it a prevailing party] after that date would have been untimely." Real Parties cite no rule, statute, or case authority for the proposition advanced, and we are aware of none. Even assuming there was a procedural deficiency, however, the trial court appropriately exercised its discretion in reaching the merits regarding plaintiff's prevailing party status in response to its filing of a memorandum of costs, and there was no prejudice to Real Parties in doing so. (See *Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 398 [the guiding principle is to reach the merits despite procedural deficiencies when possible].)

The trial court found plaintiff was not the prevailing party because plaintiff did not achieve a "practical result," it only obtained relief on one of its five causes of action, and we ordered the parties to bear their own costs on appeal in *Friends I*. The trial court's reasoning does not provide legal support for the decision. Plaintiff's "failure to succeed on all but one of several 'shotgun' causes of action has been held insufficient to deny a party fees and costs." (*Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1155-1156.) Further, the trial court's no "practical result" finding is not supported by the record. Plaintiff's litigation resulted in a court order requiring the City to set aside its decision granting Real Parties' appeal of the planning commission's decision, leaving the planning commission's denial of Real Parties' request to recommence the bed and breakfast operations intact. This was success at a practical level because plaintiff realized its primary litigation objective (*Wohlgemuth v. Caterpillar, Inc.*, *supra*, 207 Cal.App.4th at p. 1264), as shown in the "pleadings, briefs, and other such sources" (*On-Line Power, Inc. v. Mazur*, *supra*, 149 Cal.App.4th at p. 1087).

When plaintiff filed its action, it asserted four causes of action, each focused on reversing the City's decision and interpretation regarding the application of Measure G, and ensuring appropriate implementation of the measure. Its subsequent amendments to the complaint merely added related challenges to the ordinances adopted by the City *after* plaintiff filed suit -- the amendments did not change the primary relief sought in the case. Because the action yielded the primary relief sought, plaintiff was the prevailing party under section 1032. (*City of Santa Maria v. Adam*, *supra*, 248 Cal.App.4th at p. 516 ["Therefore, the 'situations other than as specified' language of Code of Civil Procedure section 1032, subdivision (a)(4) applies and '[a] plaintiff will be considered a prevailing party when the lawsuit yields the primary relief sought in the case' "].)

The City argues plaintiff did not achieve the practical result sought because the result of the action -- setting aside the city council's decision -- "does not automatically result in the [Real Parties] being prohibited from reoperating their [bed and breakfast] as [plaintiff] assumes in [its] argument."[4]  The City believes our *Friends I* opinion "merely decided the jurisdictional issue by deciding that the City did have jurisdiction to decide whether the ability to reopen the [bed and breakfast] in [plaintiff's] neighborhood had been lost through discontinuance of a nonconforming use," was not a "decision on the merits as sought by [plaintiff]," "le[ft] the substantive question unresolved," and "left the opposing sides in continuing disagreement on whether there is any right to reopen the [bed and breakfast] use [at the subject property]."  Thus, according to the City, plaintiff

---

[4]      The City provides no basis for this statement.  As plaintiff appropriately notes, section 17.88.050, subdivisions A.2. and B., of the City's municipal code provides a planning commission decision may be appealed to the city council in writing within 15 days of the decision.  Real Parties filed an appeal, but did not challenge the planning commission's determination that the "legal nonconforming use ha[d] been terminated by discontinuance of the [bed and breakfast] use with intent to abandon that use."  (*Friends I*, *supra*, C081195.)  We are aware of no provision in the City's municipal code allowing Real Parties a second bite of the apple.

13

"did not get the actual practical result [it] was after;" that is, to stop the Real Parties from operating a bed and breakfast at the Kendall house. The City is mistaken.

We will not restate our opinion in *Friends I* here (which the City would do well to review in detail), but note we did not merely decide a "jurisdictional issue"; we made a substantive determination on the merits regarding the meaning and application of Measure G that is binding on the City with respect to Real Parties' appeal of the planning commission's decision. The practical effect of our *Friends I* decision, the trial court's revised judgment in response, and the City's resolution vacating its prior reversal of the planning commission's decision is that the planning commission's denial of Real Parties' application to recommence bed and breakfast operations at the Kendall house remains intact. Thus, as we explained, plaintiff achieved the practical result sought in its action. Whether the dispute between plaintiff and Real Parties relating to the Kendall house is final is of no matter. (See *La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles* (2018) 22 Cal.App.5th 1149, 1159-1160 (*La Mirada*) [a determination that a party was successful in its action "does not require a showing that the successful party put the entire dispute to rest for once and all"]; see also *Center for Biological Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866, 895 [legal determinations are made "in the context of the outcome of the current litigation, and not [based] on speculative future events"].)

The City further posits it is "not necessarily" bound by our *Friends I* decision; we disagree. The well-established legal principles of law of the case, res judicata, and issue preclusion render the *Friends I* decision binding on the City in this action. As plaintiff notes, the fact that the opinion was unpublished does not change the application of these legal doctrines. (Cal. Rules of Court, rule 8.1115(b)(1); *Department of Industrial Relations v. Seaboard Surety Co.* (1996) 50 Cal.App.4th 1501, 1512, fn. 8.) We need not address whether *Friends I* is binding on the City in future cases because the issue is not before us.

14

The trial court also stated that its decision was "similar" to the earlier determination of this court that each side should bear its own costs. Our determination that the parties were to bear their own costs on appeal under California Rules of Court rule 8.278(a)(5) was not a prevailing party determination and cannot meaningfully support the trial court's conclusion.

We remand the matter to the trial court to determine the amount of costs to be awarded to plaintiff, if any, in accordance with section 1032 and the applicable legal principles. (See *Wakefield v. Bohlin* (2006) 145 Cal.App.4th 963, 985-987, overruled on other grounds in *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1330.)

II

*Plaintiff Was Successful On An Issue Of Public Interest*

*That Resulted In A Substantial Benefit To City Residents*

"As a general rule, parties in litigation pay their own attorney's fees. [Citation.] Section 1021.5 is an exception to that rule. [Citation.] Derived from the judicially crafted 'private attorney general doctrine' [citation], section 1021.5 is aimed at encouraging litigants to pursue meritorious public interest litigation vindicating important rights and benefitting a broad swath of citizens, and it achieves this aim by compensating successful litigants with an award of attorney's fees [citations]." (*La Mirada*, *supra*, 22 Cal.App.5th at pp. 1155-1156.) The intent of section 1021.5 fees is not "to punish those who violate the law but rather to ensure that those who have acted to protect public interest will not be forced to shoulder the cost of litigation." (*San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino* (1984) 155 Cal.App.3d 738, 756.)

Section 1021.5 authorizes an award of fees to a "successful party" in "any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity,

15

are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." When the statutory criteria have been met, fees must be awarded "unless special circumstances render such an award unjust." (*Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, 391.)

Whether plaintiff established its eligibility for fees under section 1021.5 implicates "a mixed standard of review: To the extent we construe and define the statutory requirements for an award of attorney's fees, our review is de novo; to the extent we assess whether those requirements were properly applied, our review is for an abuse of discretion." (*La Mirada*, *supra*, 22 Cal.App.5th at p. 1156.) "The pertinent question is whether the grounds given by the court for its denial of an award are consistent with the substantive law of section 1021.5 and, if so, whether their application to the facts of th[e] case is within the range of discretion conferred upon the trial courts under section 1021.5, read in light of the purposes and policy of the statute." (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1298.)

Here, the trial court found plaintiff was not entitled to attorney fees under section 1021.5 because the action did not result in the enforcement of an important right affecting the public interest and did not confer a significant benefit on the general public. As we explain, the trial court abused its discretion in finding these elements lacking, and we reverse the trial court's finding in that regard. The trial court did not, however, consider the last pertinent factor in the section 1021.5 analysis[5] -- whether the necessity and financial burden of private enforcement make an award appropriate. We therefore remand the matter to the trial court to consider the issue in the first instance.

---

[5] The last factor under section 1021.5 -- that attorney fees "should not in the interest of justice be paid out of the recovery, if any" -- is inapplicable here because there was no monetary recovery.

The "successful party" under section 1021.5 is "the party to litigation that achieves its objectives." (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 571; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1292 [a plaintiff is successful if it succeeds on any significant issue and achieves some benefit sought]; *RiverWatch v. County of San Diego Dept. of Environmental Health* (2009) 175 Cal.App.4th 768, 782-783 [party need not succeed on all of its claims].) For the same reasons expressed *ante*, plaintiff was the "successful party" for purposes of section 1021.5 in this action.[6]

Next, "[t]he trial court in its discretion 'must [first] realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right [and public interest] so as to justify an attorney fee award' under section 1021.5." (*Maria P. v. Riles*, *supra*, 43 Cal.3d at p. 1291.) Second, it must assess whether a successful party's action confers a "significant benefit" on the general public or a large class of persons. (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 939-940.) "A benefit need not be monetary to be significant. [Citation.] Where, as here, the nonpecuniary benefit to the public is the proper enforcement of the law, the successful party must show that the law being enforced furthers a significant policy . . . because 'the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation[.]' In such instances, the significant benefit and important right requirements of section 1021.5 to some extent dovetail." (*La Mirada*, *supra*, 22 Cal.App.5th at p. 1158.)

*La Mirada* is instructive -- a case cited by plaintiff and not addressed by the City and Real Parties. In *La Mirada*, the plaintiffs sought a writ to vacate and set aside the

---

**6** Real Parties argue plaintiff is not entitled to its attorney fees because it is not entitled to costs, and attorney fees "are a subspecies of costs made recoverable by statute." Because we determined plaintiff is the prevailing party under section 1032 for purposes of costs, we need not address this contention.

17

decision by the city council of the City of Los Angeles granting Target Corporation eight variances from a specific area zoning plan for a proposed project. (*La Mirada*, *supra*, 22 Cal.App.5th at pp. 1153-1154.) The plaintiffs "did so as a way to vindicate their 'interest in ensuring that the City's decisions are in conformity with the requirements of the [municipal code].' " (*Id.* at p. 1157.) The plaintiffs achieved this objective when the trial court invalidated six of the eight variances for noncompliance with the municipal code. (*Ibid*.)

As the *La Mirada* court observed, " '[z]oning laws concern "a vital public interest" ' " and "[o]ur Supreme Court has consistently recognized the importance of 'preserv[ing] the integrity of' a 'locality's governing general plan' for zoning [citation], including through judicial oversight that 'prevent[s] unjustified variance awards' that threaten to 'subver[t] . . . the critical reciprocity upon which zoning regulation rests.' " (*La Mirada*, *supra*, 22 Cal.App.5th at p. 1159.) The appellate court upheld the trial court's finding that the benefit from that action -- "requiring the City to adhere to the municipal code's 'legal requirements' for granting variances from the [specific area zoning plan]" -- "further[ed] a significant public policy." (*Id.* at pp. 1158-1159.)

The same analysis and rationale as in *La Mirada* applies here where plaintiff's action preserved the integrity of the zoning regulation imposed by Measure G. The public interest in this case is even greater, however, than the public interest in maintaining " 'the critical reciprocity upon which zoning regulation rests' " (*La Mirada*, *supra*, 22 Cal.App.5th at p. 1159) because the zoning regulation created by Measure G arose from the voters' exercise of their initiative rights, and Measure G can only be modified by another vote of the City's residents. (See Elec. Code, § 9217 ["If a majority of the voters voting on a proposed ordinance vote in its favor, the ordinance shall become a valid and binding ordinance of the city. . . . No ordinance [so adopted] shall be repealed or amended except by a vote of the people, unless provision is otherwise made in the original ordinance"].) The important public right vindicated was the voters' right

18

to require the City's presently elected officials to comply with the intent of and zoning proscriptions resulting from Measure G, passed by the City's residents through initiative in 1994. (*Associated Home Builders etc., Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 591 [it is " 'the duty of the courts to jealously guard th[e] [initiative and referendum] right of the people' " because it is " 'one of the most precious rights of our democratic process' "].)

While the City argues that "[o]btaining an interpretation of an initiative is not automatically deemed enforcement of an important public right" and is not "***per se*** 'an important public benefit,' " the City does not appear to argue that the interpretation at issue *in this case* does not implicate an important public interest. To do so would directly contravene its own statement in the resolution granting Real Parties' appeal that "the subject matter [of the appeal] is of importance to the public interest in the effective enforcement of city zoning laws." Moreover, the public participation and interest on this issue cannot be questioned.[7]

Plaintiff's success in requiring the City to abide by the intent and requirements of Measure G resulted in a substantial benefit to the City's residents. (*La Mirada*, *supra*, 22 Cal.App.5th at p. 1159 ["vindication of this significant policy benefits not only the persons living near the Project and the persons living within the geographical boundaries of the [specific area zoning plan] . . . but also all residents of the City [by holding] the City Council's zoning decisions to the letter and spirit of the municipal code"]; cf.

---

[7] In 1984, 1,082 residents voted on the initiative to "permit[] the establishment of Bed and Breakfast Guest Facilities within residential and commercial zones in the City under reasonable conditions." (*Friends I*, *supra*, C081195.) In 1994, 1,326 residents voted on the Measure G initiative, and the initiative passed by a margin of 42 votes, indicating the initiative was contentious. (*Ibid*.) The planning commission received at least seven letters regarding Real Parties' application prior to the hearing and, at the hearing, at least 14 people spoke on the issue. The city council similarly received at least nine letters and heard testimony from at least 14 people on appeal.

*Concerned Citizens of La Habra v. City of La Habra* (2005) 131 Cal.App.4th 329, 335 [no significant benefit when action resulted in correction of a " 'minute blemish' that could be repaired" in environmental impact report and the correction "was not likely to change the project"]; *Karuk Tribe of Northern California v. California Regional Water Quality Control Bd., North Coast Region* (2010) 183 Cal.App.4th 330, 336 [no significant benefit when action resulted in remand for reasons articulated by the appellate court but not by the successful party].)

The City argues no substantial benefit should be found because plaintiff had a personal economic interest and subjective motivation in bringing the action. This argument is unavailing; plaintiff's personal economic interest and subjective motivation is irrelevant to the "significant benefit" inquiry. (*City of Maywood v. Los Angeles Unified School Dist.* (2012) 208 Cal.App.4th 362, 429, fn. 32 ["[U]nder the plain language of the statute, the claimant need only show that it conferred a significant benefit on the public. The claimant's subjective motivations in pursuing the litigation are simply not relevant to that inquiry"].)

The City's reliance on our opinion in *Lafferty* is also misplaced because that case is factually distinguishable. (*Lafferty v. Wells Fargo Bank, N.A.* (2018) 25 Cal.A0pp0.5th 398, 421-422 [we upheld the trial court's denial of attorney fees to the plaintiffs because "[the defendant] did not itself engage in any behavior contrary to the public interest," "the [plaintiffs] failed to secure a significant benefit for the public [because] our holding was foreshadowed by this court's prior decision in *Music Acceptance Corp.* [*v. Lofing* (1995)] 32 Cal.App.4th 610," and "the [plaintiffs] achieved no success in [its prior appeal] in which we rejected all six of their contentions in an unpublished decision" and had only "partial success in one of their prior appeals"].)

For the reasons stated, we conclude the trial court abused its discretion in finding plaintiff "was not successful in enforcing an important public right that resulted in a substantial benefit to the public or a large class of persons."

20

DISPOSITION

The trial court's orders on the City's and Real Parties' motions to strike plaintiff's memorandum of costs and plaintiff's motion for attorney fees are reversed.  On remand, the trial court shall:  (1) determine the amount of costs to be awarded to plaintiff, if any, in accordance with section 1032 and the applicable legal principles; and (2) determine whether the necessity and financial burden of private enforcement renders an attorney fee award appropriate and, if so, the amount to be awarded.  Plaintiff shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1)-(2).)


                                                          /s/
                                                          Robie, J.



We concur:


/s/
Hull, Acting P. J.


/s/
Renner, J.



21

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| FRIENDS OF SPRING STREET,<br><br>       Plaintiff and Appellant,<br><br>   v.<br><br>NEVADA CITY,<br><br>       Defendant and Respondent;<br><br>MOLLIE POE et al.,<br><br>       Real Parties in Interest and Respondents. | C086563<br><br>(Super. Ct. No. CU15080911)<br><br>ORDER CERTIFYING<br>OPINION FOR<br>PUBLICATION |

THE COURT:

The opinion of this court filed March 28, 2019, was not certified for publication in the Official Reports. For good cause it now appears the opinion should be published in its entirety in the Official Reports and it is so ordered.

BY THE COURT:

 /s/ 
Hull, Acting P. J.

 /s/ 
Robie, J.

 /s/ 
Renner, J.

1

EDITORIALS


APPEAL from a judgment of the Superior Court of Nevada County, Thomas M. Anderson, Judge and Angelia L. Bradrick, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Reversed.

Michael W. Graf, for Plaintiff and Appellant.

P. Scott Browne, for Defendant and Respondent.

Haley & Bilheimer and Allan S. Haley for Real Parties in Interest and Respondents.

2