Filed 3/30/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| KAZUKO ARTUS, Plaintiff and Appellant, v. GRAMERCY TOWERS CONDOMINIUM ASSOCIATION, Defendant and Appellant. | A161265 (San Francisco County Super. Ct. No. CGC-17-561765) |

A condominium owner sued her homeowners' association alleging five causes of action, seeking injunctive and declaratory relief as to election and voting rules and sale and leasing guidelines. One cause of action fell to a demurrer, another to an anti-SLAPP motion to strike, and the parties stipulated that the last three were mooted when the association amended its rules and guidelines. Both sides moved for attorney fees as the prevailing party under the Davis-Sterling Act (Civ. Code, § 4000 et seq.); the homeowner also sought fees as the successful party under Code of Civil Procedure section 1021.5. Following lengthy hearings, the trial court denied attorney fees to both sides, in a comprehensive and thoughtful order. Both sides appeal. We affirm.

## BACKGROUND

### The General Setting

Gramercy Towers is a residential condominium development in San Francisco. It is managed by Gramercy Towers Condominium Association (GTCA or the Association), a non-profit mutual benefit corporation founded under the Davis-Sterling Common Interest Development Act (Davis-Sterling Act), at Civil Code section 4000 et seq. Management of GTCA is centralized in a seven-member board of directors, which retains or employs non-board and non-member agents and employees, including a general manager.

The governing documents of the GTCA consist of: (a) First Restated Articles of Incorporation filed March 20, 2008, as amended in 2010; (b) First Restated Bylaws executed March 11, 2008, and various Amendments; and (c) Declaration of Covenants, Conditions and Restrictions executed February 29, 2008. GTCA also has operating rules and guidelines adopted by the board of directors.

Kazuko K. Artus, Ph.D., J.D., (Dr. Artus), owned three units at Gramercy Towers, and as such is a member of the GTCA. Over the years Dr. Artus has had various disputes with GTCA, which generated three prior lawsuits by her, one of which led to a published opinion by Division One of this court affirming a ruling by the San Francisco Superior Court that denied Dr. Artus injunctive and declaratory relief and her claim to attorney fees: *Artus v. Gramercy Towers Condominium Association* (2018) 19 Cal.App.5th 923 (*Artus I*).

### The Lawsuit Here

On October 10, 2017, Dr. Artus filed a complaint against GTCA, followed soon thereafter by the operative first amended complaint. It alleged five causes of action, styled as follows: "(1) Injunctive Relief and

2

Appointment of Monitor; (2) Injunctive Relief Against Enforcement of the 'Restated Election and Voting Rules'; (3) Injunctive Relief Against Enforcement of the 'Sale and Leasing Guidelines'; (4) Declaratory Relief Against Enforcement of the 'Restated Election and Voting Rules' Adopted November 22, 2016; and (5) Breach of Contract and Covenant of Good Faith and Fair Dealing."

In late December, Dr. Artus sought a preliminary injunction. Following numerous pleadings, on January 23, 2018, the Honorable Harold Kahn granted it, preliminarily enjoining GTCA from enforcing the alternative election rules during the pendency of the lawsuit. As will be seen, it was Judge Kahn, a most experienced Superior Court judge, who presided over the case through its conclusion—a vigorously contested case, it must be noted, that generated a 32-page register of actions.

In response to the complaint, GTCA had filed a demurrer and a special motion to strike (anti-SLAPP). Dr. Artus filed oppositions, GTCA replies and the matters came on for hearing on March 15. On March 27, Judge Kahn entered his order, sustaining the demurrer without leave to amend as to the first cause of action; granting the anti-SLAPP motion as to the fifth cause of action; and overruling the demurrer as to the second, third, and fourth causes of action. With only the three causes of action remaining, the case was limited to the election rules and the rules for listing condominium units for sale, narrowing significantly the focus of the litigation. As Dr. Artus would later acknowledge, "My counsel and I chose not to appeal the March 27 and 28 orders [demurrer and anti-SLAPP ruling], and thereby to narrow the scope of the instant litigation."

3

**GTCA Amends the Rules and Moves for Summary Judgment**

In 2018, the GTCA revoked the 2016 Alternative Election Rules, and in their place adopted Restated and Amended Election Rules (2018 Election Rules). At the same time the board rescinded the Sale and Leasing Guidelines that had been in place (usually referred to as the Alotte Guidelines) and adopted a new set of "Sale and Leasing Guidelines."

GTCA brought a motion for summary judgment/adjudication on grounds that, the earlier election rules and guidelines having been rescinded, there was no longer a controversy upon which effective relief could be granted to Dr. Artus, that the case was moot. And on August 6, 2019, Dr. Artus and GTCA stipulated that the remaining causes of action were moot.

**The Motions for Attorney Fees**

Civil Code section 5975, subdivision (c), part of the Davis-Sterling Act, provides as follows: "In an action to enforce governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." And the Declaration to the Act provides as follows: "12.12 COSTS AND ATTORNEY'S FEES. The party who prevails in an arbitration, civil action, or other proceeding to enforce or interpret the Governing Documents shall be entitled to recover all costs and expenses, including reasonable attorney's fees, but the arbitrator, judge or other decision maker shall have final discretion to allocate such costs and expenses between the parties in a manner that will accomplish substantial justice."

In September 2019, both sides filed motions for attorney fees based on Civil Code section 5975, arguing that it was the prevailing party. Dr. Artus also sought attorney fees based on Civil Code section 5145, subdivision (b) and Code of Civil Procedure section 1021.5 (section 1021.5), the private attorney general doctrine.

4

Both sides sought over $300,000 in attorney fees, in pleadings and documents that can only be described as voluminous: from September 2 through October 18, the motions, memoranda, declarations, and exhibits in support of and opposition to the motions totaled 1867 pages!

The motions first came on for hearing on October 8, 2019, prior to which Judge Kahn had issued a tentative ruling denying attorney fees to both sides. Both sides contested, and a lengthy hearing ensued, in the course of which it was determined that the parties would prepare charts setting forth their respective positions, with the motions to be set for further hearing.

Both sides filed their charts and their further positions based on those charts, adding an additional 217 pages of material filed between May 19 and June 5, 2020. So, over 2000 pages of material had been presented to Judge Kahn when the motions came on for hearing on June 5, a lengthy hearing that generated a reporter's transcript of 58 pages. And one reading that transcript—with Judge Kahn's questions, his comments, and his colloquy with counsel—cannot but be impressed by the depth and breadth of Judge Kahn's understanding of the litigation.

On September 2, Judge Kahn issued a 20-page order denying fees to both sides, with an analysis that will be discussed in more detail below in connection with the particular issue to which it pertains. Suffice to say here that Judge Kahn concluded that Dr. Artus had four main litigation objectives and that she "achieved only one of her four main litigation objectives," limited to a procedural victory under the second objective when GTCA "changed its ways of providing notice of proposed rules changes" in amending its election rules. And even as to this, he added that Dr. Artus did not obtain any substantive victory on this second objective, and it was "the least consequential for her since, while it requires GTCA to provide better

5

paperwork when it proposes changes to its rules, Dr. Artus'[s] success on her second main litigation objective does not significantly constrain GTCA's ability to change its rules or what it includes in its rules."

Judge Kahn also denied Dr. Artus's request for fees under section 1021.5, concluding that she did not meet the "successful party" standard under that section. He further found that Dr. Artus failed to show that her lawsuit resulted in "significant benefit" to the "general public or large classes of persons."

As to GTCA's claim for fees, Judge Kahn "reject[ed] GTCA's argument that it prevailed in this lawsuit because it remained free of court restrictions to change its rules." As he saw it, GTCA's main litigation objective "was to reduce, and hopefully end, the wasteful use of its resources in fighting Dr. Artus, particularly litigation expenses and the time of its volunteers and employees." Given the possibility of another lawsuit over the rules amended by GTCA and "over the vehement and repeated objections of Dr. Artus [GTCA has not] reduced, much less eliminated, the governance disputes between GTCA and Dr. Artus and their attendant costs and staff and volunteer time." Finally, Judge Kahn added, "it would be strange indeed for a defendant, as a result of his own unilateral conduct taken without a court order or other indicia of court approval, to be considered a litigation winner. If this were the case, surely defendants would frequently take such unilateral actions, declare victory, and ask for fees."

On October 22, Dr. Artus filed her appeal, and on October 30, GTCA its cross-appeal.

## DISCUSSION: Dr. Artus's Appeal

Dr. Artus asserts two fundamental arguments on appeal, that:
(1) Judge Kahn erred in finding she was not a prevailing party, and (2) she

6

was entitled to attorney fees under Code of Civil Procedure section 1021.5.[1] Both arguments are based on a claimed standard of review that is wrong, and we thus begin with the standard of review.

**The Standard of Review**

Dr. Artus asserts that the standard of review is de novo, on the claimed basis that "entitlement to attorney fees under [Civil Code section] 1354, subdivision (f) is a question of law."[2] The two cases she cites—*Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158 and *Salawy v. Ocean Towers Housing Corp.* (2004) 121 Cal.App.4th 664—are not relevant.

The relevant cases hold that the standard of review is abuse of discretion. *Rancho Santa Fe Assn. v. Dolan-King* (2004) 115 Cal.App.4th 28 (*Rancho Santa Fe*) is illustrative, a case involving the predecessor to the very statute involved here: "Ordinarily, an award of attorney fees under a statutory provision, such as [Civil Code] section 1354, subdivision (f), is reviewed for abuse of discretion." (*Rancho Santa Fe*, at p. 46.) As an earlier case put it, a court's ruling on who is the prevailing party "should be affirmed on appeal absent an abuse of discretion." (*Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568, 1574 (*Heather Farms*).) As we ourselves have put it, "the trial ' " 'court is given wide discretion in determining which party has prevailed . . . .' " [Citation.]' " (*Sears v. Baccaglio* (1998) 60 Cal.App.4th 1136, 1158.)

---

[1] As briefly noted below, Dr. Artus also makes two other arguments, one of which has no support, the other of which requires little discussion.

[2] We note that Dr. Artus mentions only Civil Code 1354, subdivision (f) in her argument for a de novo standard of review and fails to mention any other statute under which she sought fees. We also find quizzical her reference to "section 1354," as effective January 1, 2014, as part of the renumbering and reorganization of the Davis-Sterling Act, Civil Code section 1354 was renumbered as 5975.

The same standard of review applies to Civil Code section 5145. (*Rancho Mirage Country Club Homeowners Association v. Hazelbaker* (2016) 2 Cal.App.5th 252, 260 [suggesting that the prevailing party inquiry is the same for all Davis-Sterling Act fee provisions]; see generally *Artus I, supra,* 19 Cal.App.5th at p. 944.) And also for fee orders in section 1021.5 cases. (*Karuk Tribe of Northern California v. California Regional Water Quality Control Bd., North Coast Region* (2010) 183 Cal.App.4th 330, 363 (*Karuk*) [" ' "normal standard of review is abuse of discretion" ' "].)

Not only do the cases demonstrate the discretionary nature of the trial court's analysis, but other principles also come into play in a court's discretion, two of which were in fact quoted by Judge Kahn in his order here:

(1) " 'The analysis of who is a prevailing party under the fee-shifting provisions of the [Davis-Sterling] Act focuses on who prevailed "on a practical level" by achieving its main litigation objectives.' (*Rancho Mirage Country Club Homeowners Association v. Hazelbaker, supra,* 2 Cal.App.5th at p. 260 quoting *Heather Farms, supra,* 21 Cal.App.4th 1568)"; and

(2) " '[T]he test for prevailing party is a pragmatic one, namely whether a party prevailed on a practical level by achieving its main litigation objectives.' (*Almanor Lakeside Villas Owners Association v. Carson* (2016) 246 Cal.App.4th 761, 773.)"

And on top of all that is the observation by our Supreme Court, that "*in determining litigation success*, courts should respect substance rather than form, and to this extent should be guided by 'equitable considerations.' " (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 877.) In short, abuse of discretion it is— along with practicality and equity.

Dr. Artus has not shown any impracticality in Judge Kahn's ruling. Nor any inequity. And most fundamentally, she has shown no abuse of

8

discretion. As to what such showing requires, it has been described in terms of a decision that "exceeds the bounds of reason" (*People v. Beames* (2007) 40 Cal.4th 907, 920), or one that is arbitrary, capricious, patently absurd, or even whimsical. (See, e.g., *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 390 [" ' "arbitrary, capricious, or patently absurd" ' "]; *People v. Benavides* (2005) 35 Cal.4th 69, 88 [ruling " ' "falls 'outside the bounds of reason' " ' "]; *People v. Linkenauger* (1995) 32 Cal.App.4th 1603, 1614 ["arbitrary, whimsical, or capricious"].) In its most recent observation on the subject, our Supreme Court said that "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 (*Sargon*).) Those adjectives hardly describe Judge Kahn's ruling here.

**Dr. Artus Has Not Demonstrated an Abuse of Discretion**

Dr. Artus's first argument, that Judge Kahn erred in not finding her a prevailing party, asserts she "prevailed" in three particulars: (a) "on her election-rule challenge to force the Association to adhere to Civil Code [section] 4360's rule-making procedure"; (b) "on causing major substantive revisions to the election rules"; and (c) "on her challenge to the sales and leasing guidelines by forcing the Association to adhere to proper rule making procedures." She also argues that, even if she did not achieve all her objectives, a victory as to election rules requires attorney fees award under the Davis-Sterling Act.

Passing over the fact that Dr. Artus's brief misrepresents the record in many respects, her arguments fall way short, as they do little, if anything, more than regurgitate and reassert the same arguments thoroughly analyzed—and rejected—by Judge Kahn in his analysis.

9

As indicated above, Judge Kahn determined that Dr. Artus had four main objectives in her lawsuit, which he described as follows, giving appropriate record references:

"(1) To obtain redress for '*both* current substantive and historical violations' of the [Davis-Sterling Act] by GTCA and its 'systematic and habitual mismanagement' by the appointment of a 'monitor' to ensure that GTCA is in full compliance with its obligations under the [Davis-Sterling Act] and its governing documents. (Dr. Artus'[s] memorandum in opposition to GTCA's anti-SLAPP motion filed February 15, 2018 pp. 9–10 (referring to this objective as the 'gravamen' of the complaint); *see also* the first cause of action in Dr. Artus'[s] first amended complaint and Dr. Artus'[s] application for approval of complex designation filed October 10, 2017 pp. 2–3 (explaining that this objective makes this case suitable for complex treatment)).

"(2) To enjoin the enforcement of the 2016 election rules. (Dr. Artus'[s] application and supporting papers for an order to show cause for why the court should not issue a preliminary injunction to enjoin enforcement of the 'restated election and voting rules' filed December 26, 2017; *see also* the second and fourth causes of action in Dr. Artus'[s] first amended complaint).

"(3) For a determination that GTCA is required to use the 2007 election rules as amended in 2014 unless Dr. Artus consents and the court permits because those rules were enshrined in the 2013 settlement agreement and the 2014 stipulated order. (Deposition of Dr. Artus taken on August 22, 2018 pp. 63 and 65; Dr. Artus'[s] August 2, 2018 email to Ms. Bires section (2); Dr. Artus'[s] September 4, 2018 email to Ms. Bires pp 5–7; Dr. Artus'[s] first amended complaint pars. 48 and 56–57).

"(4) For a determination that GTCA may not impose any restrictions on members and their real estate agents that Dr. Artus believes 'unreasonably

10

interfere [with] alienation rights, including but not limited to limitations on advertising, limitations on the use of the "Gramercy Towers" name and address on listing and photos of the building for marketing purposes.' (Dr. Artus'[s] August 2, 2018 email to Ms. Bires section (7); *see also* the third cause of action in Dr. Artus'[s] first amended complaint and Dr. Artus'[s] September 4, 2018 email to Ms. Bires pp. 7–11 ('I can see no reason why GTCA can be allowed to seek information regarding real estate agents its members retain'))."

Having defined the four main litigation objectives, Judge Kahn then went on to analyze them, one-by-one, to conclude that Dr. Artus had prevailed in only one, holding as follows:

"Dr. Artus achieved only one of her four main litigation objectives. If on a practical level that one objective was equal to or greater than the other three, [Davis-Sterling Act] fees case law might support an award of fees to Dr. Artus. In my estimation, however, Dr. Artus'[s] procedural win on her second main litigation objective is nowhere close in value to the wins she failed to achieve on her first, third and fourth main litigation objectives. Indeed, of her four main litigation objectives, the second one is the least consequential for her since, while it requires GTCA to provide better paperwork when it proposes to change its rules, Dr. Artus'[s] success on her second main litigation objective does not significantly constrain GTCA's ability to change its rules or what it includes in its rules. Accordingly, per the above pragmatic analysis of Dr. Artus'[s] main litigation objectives, I find that Dr. Artus is not entitled to an award of fees per either [Civil Code section] 5145[, subdivision] (b) or [Civil Code section] 5975[, subdivision] (c) because she only achieved a very modest portion of her main litigation objectives. (*Accord* Declaration of Plaintiff Kazuko K. Artus, Ph.D., J.D., in

11

Support of Plaintiff's Motion for Attorney's Fees filed September 12, 2019, par. 54 (Dr. Artus acknowledged that she has 'yet to accomplish my objective of having [Gramercy] comply with rules regulating it'))."

Dr. Artus's arguments, however lengthy they be, demonstrate nothing to the contrary. Dr. Artus's opening brief is 44 pages long, with the arguments quoted above, arguments that fundamentally make three points: (1) she achieved her primary litigation objective when GTCA amended its election rules and guidelines effectively revoking the prior versions; (2) GTCA mooted the case once she achieved her objectives; and (3) the preliminary injunction order supports her position that she prevailed. None of these arguments is persuasive—not to mention all were rejected by Judge Kahn.

Contrary to her argument that she obtained her primary litigation objective when GTCA properly adopted new election rules by informing the "purpose and effect" of those rules, the record shows that her primary objective was to compel GTCA to use only the election procedures. Dr. Artus alleged that she sought to require "GTCA to follow the *Election Procedures*" and to conduct elections and all other related activities under the *Election Procedures*; her testimony was similar: that GTCA should be only using the election procedures and "no other election rules."

As to Dr. Artus's claim of mootness, that she "had no choice but to agree with GTCA's position" on mootness, Judge Kahn concluded otherwise: "Dr. Artus could have stood her ground and continued to litigate. The 2018 rules and guidelines included several provisions from the prior rules and guidelines that Dr. Artus contended were invalid in the first amended complaint. As but two examples, the 2018 election rules did not place any limits on inspector compensation and the 2018 sales and leasing guidelines contained significant restrictions on advertising members' units. Dr.

12

Artus'[s] claims regarding those provisions did not become moot merely because those provisions were now included in new sets of rules and guidelines. Nor, as discussed previously, did her claim—one of her main litigation objectives—that GTCA lacked authority to adopt any election rules other than the 2007/2014 rules without her consent and permission of the court become moot merely because GTCA adopted yet another set of election rules at variance from the 2007/2014 rules she contended that 'GTCA cannot touch.' (Dr. Artus'[s] May 21, 2018 email to John Zappettini."

And Dr. Artus's reliance on the preliminary injunction is not only unavailing, it is premised on a gross overstatement of the record. That is, Dr. Artus's brief asserts that the preliminary injunction enjoined "GTCA from using the alternative election rules during the pendency of this lawsuit." In fact, Judge Kahn's preliminary injunction was limited to the one election, in early 2018, and four procedural requirements on that election under the *Election Procedures*: (1) the appointment of three inspectors; (2) those inspectors would appoint and oversee ballot counters; (3) abide by the communications provision of the *Election Procedures*; (4) and abide by the ballot retention procedures of the *Election Procedures*.

Dr. Artus's attempted recharacterization of the preliminary injunction order was in fact contradicted by Judge Kahn's order which stated: "Yet it must be kept in mind that the preliminary injunction order was a preliminary, not a final, order and only applied to a single election. As Dr. Artus knows from the 2014 lawsuit she filed against GTCA, a later trial can eviscerate an earlier preliminary injunction victory and deprive her of the ability to receive fees."

13

**Dr. Artus Has Not Demonstrated the Right to Attorney Fees under Code of Civil Procedure section 1021.5**

As noted, Dr. Artus also sought attorney fees based on section 1021.5. Judge Kahn rejected it, concluding that Dr. Artus was not a "successful party" under that section, and for the "further reason [that she] failed to show, as required for a [section] 1021.5 fees award, that this lawsuit resulted in a 'significant benefit' to the 'general public or a large class of persons.' " As he went on to explain, "Her one real win—which requires GTCA to incur greater effort in preparing its notice materials for proposed rules changes—is of questionable significance to the vast majority of GTCA members and will likely result in higher assessments to GTCA members to pay for the increased costs to 'dot every i and cross every t' in the notice materials to avoid disputes from Dr. Artus. Indeed, crediting the declarations of GTCA's staff and volunteers it appears that few of the governance disputes raised by Dr. Artus are of concern to other GTCA members. Dr. Artus has made no contrary showing."

Dr. Artus's argument that she is "entitled" to attorney fees under section 1021.5, has six subparts: (1) she "obtained some benefit on a significant issue in the litigation"; (2) "interim and partial success is sufficient under [section] 1021.5"; (3) Judge Kahn "did not apply the correct test"; (4) the ruling "that the action did not confer a significant benefit on the general public, or a large class of persons was incorrect as a matter of law"; (5) "necessity and financial burden of private enforcement make [an] award appropriate"; and (6) "there was no monetary recovery." The argument is not persuasive.

Section 1021.5 provides in pertinent part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing

14

parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement or enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. . . ."

In *Karuk, supra*, 183 Cal.App.4th 330, we discussed at length section 1021.5 and its operation, included within which was this explanation how an award made pursuant to this statute is reviewed:

" ' "The Legislature adopted section 1021.5 as a codification of the private attorney general doctrine of attorney fees developed in prior judicial decisions. . . . [T]he private attorney general doctrine 'rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible.' Thus, the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases." [Citation.]' " (*Karuk, supra*, 183 Cal.App.4th at p. 362.)

"Put another way, courts check to see whether the lawsuit initiated by the plaintiff was 'demonstrably influential' in overturning, remedying, or prompting a change in the state of affairs challenged by the lawsuit. (E.g., *Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 687; *RiverWatch v. County of San Diego Dept. of Environmental Health* (2009)

15

175 Cal.App.4th 768, 783; *Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331, 1346, fn. 9.) ' "Entitlement to fees under [section] 1021.5 is based on the impact of the case as a whole." ' (*Punsly v. Ho* (2003) 105 Cal.App.4th 102, 114, quoting what is now Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 2d ed. 2008) § 4.11, p. 100.) As for what constitutes a 'significant benefit,' it 'may be conceptual or doctrinal, and need not be actual and concrete, so long as the public is primarily benefited.' (*Planned Parenthood v. Aakhus* (1993) 14 Cal.App.4th 162, 171.)

"Thus, a trial court which grants an application for attorney fees under section 1021.5 has made a practical and realistic assessment of the litigation and determined that (1) the applicant was a successful party, (2) in an action that resulted in (a) enforcement of an important right affecting the public interest and (b) a significant benefit to the general public or a large class of persons, and (3) the necessity and financial burden of private enforcement of the important right make an award of fees appropriate.

" ' "On review of an award of attorney fees . . . the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees . . . have been satisfied amounts to statutory construction and a question of law." ' (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175, quoting *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.)" (*Karuk, supra*, 183 Cal.App.4th at p. 363.)

Applying those rules, we went on in *Karuk* to reverse an award of $138,000 in attorney fees, concluding that three of the statutory requisites to an award under section 1021.5 were absent. (*Karuk*, at p. 364.) Likewise here.

16

It is perhaps enough to note that Dr. Artus does not specifically address the threshold requisite of demonstrating she was a "successful party." Nor does she demonstrate any significant benefit to the general public or a large class of persons.

*Bowman v. City of Berkeley* (2005) 131 Cal.App.4th 173, 175–176 (*Bowman*), cited by Dr. Artus in claimed support of her argument she achieved a significant benefit, is not to the contrary. The facts there included a petition by a group of owners to overturn the city's approval of a housing project for seniors, which succeeded in overturning the initial approval. The project was ultimately re-approved and the trial court denied the remainder of the groups' claims. (*Id.* at p. 177.) The trial court thereafter granted attorney's fees in connection with the due process achievement. Division Four of this court affirmed. Doing so, the court noted the redo of the approval by the city, in light of plaintiffs' petition, "resulted in a great deal of additional public input on the project, including substantial new written submissions, and oral statements to the city council, from city staff as well as proponents and opponents of the project"; and the trial court determined " 'both parties used the opportunity to supplement the administrative record to provide additional evidence intended to sway findings made by the council members.' " (*Id.* at p. 180.) The setting here is a far cry.

Here, only Dr. Artus filed suit to challenge GTCA's governance. She did not show that other members objected to GTCA's ways or its rules. And she did not achieve any significant benefit to other members when GTCA undertook to amend its election rules and sales guidelines, let alone benefit to the public.

Likewise unavailing is *La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles* (2018) 22 Cal.App.5th 1149 (*La Mirada*),

17

where plaintiffs filed writ petitions to invalidate variances granted by the city in approving a Target retail store and obtained a judgment "invalidating six of the eight municipal code variances, enjoining any actions 'in furtherance of' those variances, and 'immediately . . . restrain[ing] . . . all construction activities' [and] also authorized plaintiffs to seek attorney's fees." Both parties appealed, and during the appeal, per Target's urging, the city amended its zoning which mooted the appeal. (*Id.* at p. 1154.) The court dismissed the appeals as moot but left the judgment intact and ultimately awarded plaintiff attorneys fees. (*Id.* at p. 1155.) The significant benefit was an order requiring the city to comply with the legal requirements to grant the variance. (*Id.* at pp. 1158–1159.)

Unlike in *La Mirada,* Dr. Artus did not obtain a judgment invalidating any of GTCA's governance that she challenged; the mootness of this action was not found by Judge Kahn but by Dr. Artus's stipulation; and GTCA did not take any action to change its rules because of Dr. Artus's urgings.

Dr. Artus argues that partial or interim success is enough for an award of attorneys' fees under section 1021.5, citing to *Bowman, supra,* 131 Cal.App.4th at p. 178 and *La Mirada, supra,* 22 Cal.App.5th at p. 1160. To the contrary, as Dr. Artus herself knows, she has already failed on a similar argument in *Artus I, supra,* 19 Cal.App.5th at p. 927, where Division One noted the "well-established principles that fees and costs are ordinarily not granted for interim success, and that the prevailing party is determined, and fees and costs awarded, at the conclusion of the litigation."

As indicated, Dr. Artus makes two other arguments, numbered six and seven: (6) "Trial court abused its discretion in denying fees to [Dr. Artus] because she stopped litigating after the controversy was mooted by GTCA," and (7) "The Court of Appeal should reconsider or reformulate the interim

18

attorney's fees rules as it applies to associations that moot controversies."
Neither argument merits discussion. The third argument, all of five lines,
has no support. And the fourth argument essentially asks us to change some
language in the earlier opinion by our colleagues in Division One. It is most
inappropriate.

## DISCUSSION: GTCA's Appeal

### GTCA Has Not Shown an Abuse of Discretion

Cross-appealing Judge Kahn's denial of attorney fees to it, GTCA has
filed a 22-page opening brief that has an introduction, a statement of facts
and procedural history, and fewer than 12 pages described as "discussion,"
fewer than two pages of which could even be considered argument.

The discussion begins with this assertion: "GTCA's issue on appeal is
the trial court erred in ruling that its litigation objective was to reduce its
resources and end the fighting with Dr. Artus; rather, GTCA's litigation
objective was to prevent Dr. Artus from dictating how GTCA should operate
and what rules it should adopt. To that end, it prevailed and should be
awarded attorneys' fees per Civil Code section 5975, subdivision (c) and its
Declaration."

And what might be called the argument that follows consists of these
three brief paragraphs:

"The trial court's basis for determining GTCA's litigation objective drew
from 'GTCA's memorandum in support of its anti-SLAPP motion to strike
filed January 16, 2018' and declarations in support. The trial court found
these declarations 'replete with extremely high costs that GTCA has incurred
in both its in-court and out-of-court disputes with Dr. Artus.' The arguments
and declarations from the anti-SLAPP motion on the use of GTCA's resources

19

and costs fighting Dr. Artus'[s] continuing disputes with the board were made in the context of the Association's argument that the matter was of public interest to the community to warrant protection of the anti-SLAPP statute. See Civ[il] Code [section] 425.16. Anti-SLAPP public interest arguments do not equate to GTCA's primary goal in this litigation was merely to reduce the use of the community's resources to fight Dr. Artus. If that was the goal, GTCA would have capitulated early in the litigation without any strategic motion practice on a demurrer, anti-SLAPP motion, discovery, or summary judgment motion; or GTCA would have sought early settlement.

"Instead, GTCA's stance and objective throughout the litigation was to not give into Dr. Artus'[s] demands or desires for GTCA to be governed by her terms and her rules, and for Dr. Artus to not obtain any relief on her claims that GTCA was operating improperly. As stated by GTCA's president: 'It has been the Board's objective in this litigation to not allow a single owner to dictate how the Board should function or bully its decision-making.'

"Thus, even under an abuse of discretion standard, the trial court's determination of GTCA's litigation objective and that it did not prevail on that objective cannot stand."

That is essentially it. It is unpersuasive, as it utterly fails to come to grips with Judge Kahn's detailed analysis, which includes the following: "Because this lawsuit ended as a result of GTCA's unilateral decision to adopt revised election rules and sales and leasing guidelines, which GTCA could have done at any point in the lawsuit and for which it needed no order or approval from the court, on a pragmatic and practical level GTCA did not achieve its litigation objectives. It would be strange indeed for a defendant, as a result of its own unilateral conduct taken without a court order or other indicia of court approval, to be considered a litigation winner. If this were

the case, surely defendants would frequently take such unilateral actions, declare victory, and ask for fees. In my almost 40 years as a civil litigator and a judge handling civil cases, I have never seen anyone do this before. And, despite my extensive efforts to find such a case, I could not locate any published California decision which holds or suggests that a defendant can be a prevailing party for purposes of a fees award as a result of its own unilateral actions that moot the plaintiff's claims. I therefore reject GTCA's argument that it prevailed in this lawsuit because it remained free of court restrictions to change its rules. Cutting to the chase, the fatal defect in GTCA's argument is that it remains free of court restrictions because it took unilateral action to avoid rulings on court restrictions and, in doing so, simply 'kicked the can down the road' as to whether a court would place restrictions on its rule changes.

"The three cases cited by GTCA to support its position that it prevailed in this lawsuit are readily distinguishable. In *Almanor* [*Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761] the determination that a homeowners' association was the prevailing party came after a trial where the parties fully litigated the claims and cross-claims of both parties. In *Salehi v. Surfside III Condominium Owners' Association* (2011) 200 Cal.App.4th 1146 the court held that the defendant homeowners' association was a prevailing party because the plaintiff dismissed his claims on the eve of trial due to the unavailability of a witness without seeking a continuance. In *Villa De La Palmas Homeowners Association* [*v. Terifaj*] (2004) 33 Cal.4th 73 a plaintiff homeowners' association was the prevailing party because it obtained an injunction which achieved its main litigation objective. Unlike this lawsuit, in none of the cases relied on by GTCA did the prevailing party association take any action outside the lawsuit, unilateral or

21

otherwise, that precipitated dismissal of its member's claims based on mootness or any similar ground.[3]

"In all events, viewed on a pragmatic and practical level GTCA's main litigation objective in this lawsuit, as it appears to have been in most or all of its dealings with Dr. Artus on governance issues, was to reduce, and hopefully end, the wasteful use of its resources in fighting Dr. Artus, particularly litigation expenses and the time of its volunteers and employees. (*See* GTCA's memorandum in support of its anti-SLAPP motion to strike filed January 16, 2018 p. 4 (in two years GTCA received over 400 emails from Dr. Artus with complaints about GTCA's governance. 'Nine out of ten complaints the Association [GTCA] receives from its members are from [Dr. Artus]. . . . Considerable time and community resources are expended to ensure each of [Dr. Atrus's] requests are addressed out of fear that any issue, no matter how trivial, may result in litigation.')) The declarations of GTCA's representatives are replete with the extremely high costs that GTCA has incurred in both its in-court and out-of-court disputes with Dr. Artus. As the August and September 2018 emails by Dr. Artus to Ms. Bires and the many declarations of Dr. Artus filed in this lawsuit reveal, neither this lawsuit nor GTCA's unilateral adoption of revised election rules and sales and leasing guidelines in 2018 over the vehement and repeated objections of Dr. Artus has reduced, much less eliminated, the governance disputes between GTCA and Dr. Artus and their attendant costs and staff and volunteer time. In this lawsuit, GTCA turned tail, instead of addressing Dr. Artus'[s] claims on the merits. It should not be rewarded for doing so by an award of fees."

---

[3] *Salehi* and *Almanor* are the two cases GTCA relies on here.

We end our opinion quoting the concern, the counsel, of Judge Kahn: "Sad to say, unless the past is a poor predictor of the future or the parties are no longer able or willing to devote the huge resources they have devoted previously, it is likely that there will be a fifth *Artus v. GTCA* lawsuit. This fourth lawsuit, especially the way it concluded, accomplished little or nothing to prevent that from occurring. In that regard, I conclude this order by repeating a statement I made almost three years ago at the final hearing in the third *Artus v. GTCA* lawsuit: 'I'm aware that there has been a long history of disputes between Dr. Artus and this association, I'm trying to send a message here. And that message is, don't run to court. Run to try to work things out. Both sides." To that we say "Amen."

## DISPOSITION

The order denying attorney fees is affirmed. Each side shall bear its own costs.

_____
Richman, Acting P. J.

We concur:


_____
Stewart, J.


_____
Mayfield, J. *


*Artus v. Gramercy Towers Condominium Association* (A161265)

      *Superior Court of Mendocino County, Judge Cindee Mayfield, sitting as assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial Court: | San Francisco Superior Court |
| Trial Judge: | Honorable Harold Kahn |
| Attorney for Plaintiff and Appellant Kazuko Artus: | Millstein & Associates, David J. Millstein, Owais Bari; |
| Attorney for Defendant and Appellant Gramercy Towers Condominium Association: | Angius & Terry LLP, Cang N. Le, Joshua D. Mendelsohn; Tinnelly Law Group, Cang N. Le,  Joshua D. Mendelsohn. |