Filed 7/6/22  Cassilly v. City of L.A. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| BARRY CASSILLY et al., | B311132 |
| Plaintiffs and Appellants, | |
| v. | Los Angeles County |
| | Super. Ct. No. 19STCP00586 |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Gaines & Stacey, Fred Gaines and Alicia B. Bartley for Plaintiffs and Appellants.

Michael N. Feuer, City Attorney, Terry P. Kaufmann-Macias, Assistant City Attorney, Kathryn C. Phelan and Oscar Medellin, Deputy City Attorneys, for Defendant and Respondent.

_____

**SUMMARY**

Plaintiffs Barry Cassilly, the Linden Living Project, LLC, and Venice Homeowners Alliance appeal from a trial court order denying their motion for attorney fees under Code of Civil Procedure section 1021.5 (section 1021.5). That section authorizes an award of attorney fees to a successful party in an action that "has resulted in the enforcement of an important right affecting the public interest" if specified conditions are met. The trial court found that one of those conditions—that "a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons"—was not met.

We affirm the trial court's order.

## FACTUAL AND LEGAL BACKGROUND

### 1. Nature of the Underlying Dispute

Mr. Cassilly is the managing member of Linden Living Project, the owner of real property on Linden Avenue in Venice. In 2015, he filed an application with defendant City of Los Angeles for a coastal development permit to demolish and rebuild the single-family home on his property, asserting a categorical exemption from environmental review under the California Environmental Quality Act (CEQA, Pub. Resources Code, § 21000 et seq.). (Further statutory references, except for section 1021.5, are to the Public Resources Code.) The city decided the categorical exemption did not apply because the property was a historical resource, and required an environmental impact report (EIR). Plaintiffs sought a writ of mandate, as further described, *post*.

### 2. CEQA and Historical Resources

Ordinarily, the construction of a single-family residence is a categorical exemption from CEQA. (See § 21084, subd. (a); Cal. Code Regs., tit. 14, § 15303, subd. (a).) But "[a] project that may

2

cause a substantial adverse change in the significance of a historical resource, as specified in Section 21084.1," is not categorically exempt (§ 21084, subd. (e)), as it is "a project that may have a significant effect on the environment" (§ 21084.1).

CEQA and its Guidelines establish three categories of historical resource: mandatory, presumptive, and discretionary historical resources. (*Valley Advocates v. City of Fresno* (2008) 160 Cal.App.4th 1039, 1051 (*Valley Advocates*).)

Section 21084.1 defines the mandatory category of historical resource as "a resource listed in, or determined to be eligible for listing in, the California Register of Historical Resources."

The presumptive category in section 21084.1 includes historical resources listed in a local register of historical resources, as defined in subdivision (k) of section 5020.1,[1] or deemed significant as defined in subdivision (g) of section 5024.1,[2] "unless

---

[1] Section 5020.1, subdivision (k) defines " '[l]ocal register of historical resources' " to mean "a list of properties officially designated or recognized as historically significant by a local government pursuant to a local ordinance or resolution."

[2] Section 5024.1, subdivision (g) states: "A resource identified as significant in an historical resource survey may be listed in the California Register if the survey meets all of the following criteria: [¶] (1) The survey has been or will be included in the State Historic Resources Inventory. [¶] (2) The survey and the survey documentation were prepared in accordance with office procedures and requirements. [¶] (3) The resource is evaluated and determined by the office to have a significance rating of Category 1 to 5 on DPR Form 523. [¶] (4) If the survey is five or more years old at the time of its nomination for inclusion in the California Register, the survey is updated to identify historical resources which have become eligible or ineligible due to changed

3

the preponderance of the evidence demonstrates that the resource is not historically or culturally significant."  (§ 21084.1.)

Finally, the discretionary category in section 21084.1 permits a "lead agency" to declare a resource is a historical resource even if it is not listed in or eligible for listing in either the California Register of Historical Resources or a local register of historical resources and is not deemed significant as defined by section 5024.1.  (§ 21084.1.)

### 3. The Survey

SurveyLA is a citywide historic resources survey of 880,000 properties, undertaken between 2010 and 2017, to identify and record "information on properties and neighborhoods that reflect Los Angeles' architectural, social, and cultural history."  The resources identified are *not* "designated resources"; designation and nomination to California or national registers are separate processes.

The Venice SurveyLA reports were completed in March 2015.  The Venice survey identified three residential historic districts as potentially eligible for designation, one of which is the Milwood Venice Walk Streets Historic District, where plaintiffs' property is located.

### 4. The Zoning Information Memoranda

After the Venice survey was completed, the city's planning department prepared three "zoning information memoranda," one for each of the three Venice districts.  (The parties refer to these as ZI memoranda.)  A ZI memorandum is used by the city to add

---

circumstances or further documentation and those which have been demolished or altered in a manner that substantially diminishes the significance of the resource."

information about a property or properties into the Zone Information and Map Access System, a web site that provides zoning information for properties in Los Angeles.

The ZI memoranda posted for all three Venice districts stated that "[t]he Historic District and Contributing properties *are presumed to be historical resources* under [CEQA]" (italics added), and "[a]ny proposed new development project that requires discretionary project approvals, such as a Coastal Development Permit, will trigger review under CEQA and a thorough investigation and analysis of project impacts to historical resources."

**5.      Further Background Facts and Plaintiffs' Petition**

When plaintiffs applied for a coastal development permit to demolish the home and build another one, the city required Mr. Cassilly to prepare and submit a historical resource assessment, "to analyze the impact of the Project on the suggested potential Milwood Venice Walk Streets District . . . identified in SurveyLA as potentially qualifying for designation as an historic resource."

Mr. Cassilly submitted a historical resource assessment prepared by four highly qualified individuals who concluded the property "was not a historical resource and was not a contributor to any potential historical district." The city's Office of Historic Resources ultimately rejected the historical resource assessment by plaintiffs' experts, and concluded the proposed demolition "would have a significant impact on the integrity of the Milwood District." In May and June 2017, the city demanded plaintiffs prepare an EIR.

In October 2018, plaintiffs submitted a letter to the city outlining their position that the demand for an EIR was contrary

to law.  Plaintiffs filed no further materials and no application or fees for an EIR, and on November 29, 2018, the city terminated plaintiffs' application.

Plaintiffs filed this lawsuit on February 26, 2019.  Plaintiffs sought a writ of mandamus ordering the city to reinstate and process Mr. Cassilly's application with a categorical exemption. Plaintiffs also sought declaratory relief and an injunction "preventing the City from requiring an applicant for a discretionary permit for a single family home or infill project otherwise qualifying for a categorical exemption from CEQA to prepare an EIR in sole reliance on SurveyLA and Z.I. No. 2454 [for the Milwood district] or similar Zoning Information memoranda, as these actions are in violation of CEQA, City Ordinances and CEQA Guidelines."

## 6.    The Trial Court's Ruling on the Merits

The trial court granted plaintiffs' petition, in part.

The court found that "SurveyLA, as implemented in the ZIs, does not create a presumption of an historic resource."  But the city has discretion under CEQA to deem a property a historical resource even if it is not eligible for listing in the California or local register and not deemed significant under the criteria in section 5024.1.  (§ 21084.1.)  The lead agency has such discretion if " 'the lead agency's determination is supported by substantial evidence in light of the whole record.' "  (*Valley Advocates, supra,* 160 Cal.App.4th at pp. 1059, 1060.)  The court found substantial evidence (SurveyLA, plus the city's own experts in the Office of Historical Resources) supported the city's discretionary determination to deem the property a historic resource and to require an EIR for the property.

Thus the court concluded: "A writ of mandate will issue requiring the City to rescind the ZIs and cease enforcement of the presumption contained therein. The City will be enjoined from using SurveyLA, as implemented through [the three Venice ZIs], to presume historic status for identified properties without additional evidence. The City may require an HRA [historical resource assessment] for projects solely on the basis of their listing in SurveyLA, and it also may require an EIR if no HRA is prepared or if [the Office of Historical Resources]'s experts disagree with the HRA. In all other respects, the Petition is denied."

The court entered judgment granting the writ on September 16, 2020, ordering the city to cease enforcement of the presumption in the ZI memoranda and to rescind the memoranda or amend them "to eliminate any and all references to SurveyLA creating a presumptive historic status" under CEQA. "Without limitation to the City's use of SurveyLA as evidence, including substantial evidence where supported, [the city] is further enjoined from using SurveyLA to presume a property identified in SurveyLA is a historical resource for purposes of [section 21084.1] unless and until SurveyLA meets the criteria in [section 5024.1, subdivision (g)]." (See fn. 2, *ante.*)

On October 5, 2020, the city amended the three ZI memoranda to comply with the court's writ, and on October 26, 2020, the city filed its return and request to discharge the writ.

7. **The Attorney Fee Motion and Ruling**

Plaintiffs moved for an award of attorney fees under section 1021.5, the codification of the private attorney general doctrine. As mentioned at the outset, the trial court denied the

7

motion, finding plaintiffs' success in the litigation did not confer a significant benefit on the public or a large class of persons.

Plaintiffs filed a timely notice of appeal from the court's order denying attorney fees.

## DISCUSSION

We find no error in the trial court's ruling.

1. **The Law**

As relevant here, a court may award attorney fees to a successful party "in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, [and] (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate . . . ." (§ 1021.5.)

The Supreme Court has explained the "significant benefit" criterion this way: "Of course, the public always has a significant interest in seeing that legal strictures are properly enforced and thus, in a real sense, the public always derives a 'benefit' when illegal private or public conduct is rectified. Both the statutory language ('*significant* benefit') and prior case law, however, indicate that the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation. We believe rather that the Legislature contemplated that in adjudicating a motion for attorney fees under section 1021.5, a trial court would determine the significance of the benefit, as well as the size of the class receiving benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 939–940 (*Woodland Hills*).)

8

We review plaintiffs' eligibility for attorney fees under section 1021.5 "with a mixed standard of review: To the extent we construe and define the statutory requirements for an award of attorney's fees, our review is de novo; to the extent we assess whether those requirements were properly applied, our review is for an abuse of discretion." (*La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles* (2018) 22 Cal.App.5th 1149, 1156 (*La Mirada*).)

**2.    This Case**

The trial court found the writ preventing the city from presuming the historical status of properties for purposes of CEQA, solely due to their identification in SurveyLA, "at least conceptually is an important right requiring the City to require environmental review within the confines of CEQA. Because the right involves CEQA compliance, it also affects the public interest." The court also found plaintiffs "have shown the necessity and the financial burden of private enforcement." But plaintiffs' success "did not confer a significant benefit on the public or a large class of persons."

The trial court explained: "The court accepts that the writ preventing the City from presuming the historical status of properties for purposes of CEQA solely due to their identification in SurveyLA at least conceptually is an important right, but the right involved is not fundamental and not of major import." The court viewed the issue as "whether any benefit to this large group of homeowners"— that is, the hundreds of property owners in the three Venice neighborhoods—"is significant." The court concluded:

"[T]he litigation only removed the presumption created by SurveyLA designation and did not remove the City's ability to exercise discretion to require an EIR. [Plaintiffs] never

9

demonstrated that the City had a practice of requiring an EIR solely on the basis of the ZIs' presumption and never showed that the City did so in this case. Moreover, the City may still require an HRA [historical resource assessment] based on a SurveyLA designation and still may consider a SurveyLA designation as evidence in exercising its discretion to require an EIR." Consequently, the litigation "did not confer a significant benefit" on the public or a large class of persons.

Plaintiffs contend the trial court's finding "improperly downplays the significance of the requirement that the City apply the proper evidentiary standard . . . ." Plaintiffs explain that the erroneous ZI's "certainly had a chilling effect" on Venice property owners, citing the cost and time involved in an EIR, and "directly contribute[d] to high housing costs in the City." Further, plaintiffs say, as a result of this case, when the city approves a project, a challenger will "have a much more difficult evidentiary burden to meet to succeed in overturning the project approval in court." These assertions are unsupported by evidence or legal authority, and are in striking contrast to the trial court's realistic assessment of the gains plaintiffs obtained from the litigation, quoted above.

Plaintiffs insist the trial court's finding is "inconsistent with controlling case law" and therefore an abuse of discretion. They cite *La Mirada, supra,* 22 Cal.App.5th at page 1159, and *Friends of Spring Street v. Nevada City* (2019) 33 Cal.App.5th 1092, 1110 (*Spring Street*).

In *La Mirada*, the plaintiffs succeeded in invalidating six of eight variances from a neighborhood area plan that the city council had granted to Target Corporation for a proposed project. (*La Mirada, supra*, 22 Cal.App.5th at pp. 1153–1154.) The court found no abuse of discretion in the trial court's finding the lawsuit

conferred a significant benefit, that is, "requiring the City to adhere to the municipal code's 'legal requirements' for granting variances" from the neighborhood area plan. (*Id.* at pp. 1158–1159.) The court cited the importance of preserving the integrity of a locality's general plan for zoning, and preventing unjustified variance awards "that threaten to 'subver[t] . . . the critical reciprocity upon which zoning regulation rests [citation].' " (*Id.* at p. 1159.)

In *Spring Street*, the plaintiff succeeded in requiring the defendant city to abide by the intent and requirements of a voter-approved initiative measure, and the court found this "resulted in a substantial benefit to the City's residents," citing *La Mirada*. (*Spring Street, supra,* 33 Cal.App.5th at pp. 1110, 1108–1110.)

We do not disagree with *La Mirada* and *Spring Street* but we do not see any controlling similarity in circumstances between those cases and this case. Here, plaintiffs' success in correcting erroneous ZI memoranda is not analogous to enforcing a voter initiative (*Spring Street*) or forcing compliance with a municipal code (*La Mirada*). *Woodland Hills* established that the public always derives a benefit when illegal conduct is rectified, but likewise that not all such benefits are significant. (*Woodland Hills, supra,* 23 Cal.3d at pp. 939–940.)

The trial court took the view that the right enforced here was "at least conceptually" an important right, but was "not fundamental and not of major import," and as a result plaintiffs "must make a greater showing of significant benefit for a large class of persons." (See *La Mirada, supra,* 22 Cal.App.5th at p. 1158 [in cases involving statutory violations, "the significant benefit and important right requirements of section 1021.5 to some extent dovetail"].) We find the court's analysis to be a classic

example of "a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." (*Woodland Hills, supra,* 23 Cal.3d at p. 940.)

## DISPOSITION

The order is affirmed. Defendant shall recover its costs on appeal.


GRIMES, Acting P. J.


WE CONCUR:


WILEY, J.


HARUTUNIAN, J.*

---

\* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.