Filed 12/19/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MAKE UC A GOOD NEIGHBOR et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> REGENTS OF UNIVERSITY OF CALIFORNIA et al, <br><br>     Defendants and Respondents. | A172510 <br><br> (Alameda County Super. Ct. No. RG21110142) |

Make UC A Good Neighbor and the People's Park Historic District Advocacy Group (collectively, Good Neighbor) appeal from a postjudgment order denying their motion for attorney fees under the private attorney general doctrine. (See Code Civ. Proc., § 1021.5; *Vasquez v. State of California* (2008) 45 Cal.4th 243, 250.)[1] Good Neighbor argues it was a "successful party" because it secured important legal precedents when this court ruled in its favor on two issues, despite the fact that the Legislature subsequently abrogated both those holdings by statute and, accordingly, our Supreme Court reversed. We conclude that, under California Rules of Court, rule 8.1115, the Supreme Court's reversal disapproved our opinion on those issues, meaning they are not citable precedent. We affirm.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

1

## BACKGROUND

### A.

Each University of California campus periodically adopts a long range development plan, a high-level planning document that helps guide the university's decisions on land and infrastructure development. (See Ed. Code, § 67504, subd. (a)(1); *Make UC a Good Neighbor v. Regents of University of California* (2024) 16 Cal.5th 43, 49 (*Make UC II*); *Make UC a Good Neighbor v. Regents of University of California* (2023) 88 Cal.App.5th 656, 666 (*Make UC I*), superseded by statute and reversed by *Make UC II* at pp. 48-49, 60-61, 64-66.) UC Berkeley's 2021 development plan estimated it would add 12,070 students, faculty, and staff to the university's population by the 2036-2037 academic year and planned for the addition of 11,730 student beds to university housing. (*Make UC II,* at p. 50; *Make UC I,* at p. 666.) This litigation centered on the adequacy of an environmental impact report, or EIR, for two separate-but-related projects: (1) the 2021 development plan, and (2) a site-specific student housing project at People's Park. (*Make UC II*, at pp. 48, 50-51; *Make UC I*, at pp. 664-666, 668.)

Good Neighbor filed the operative petition for writ of mandate against the Regents of the University of California, the president of UC Berkeley, and the Chancellor of UC Berkeley (collectively, the Regents) alleging violations of the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.). The writ petition asked the trial court to void the approvals of the 2021 development plan, the People's Park housing project, and the EIR for those projects. The trial court denied Good Neighbor's writ petition and entered judgment in favor of the Regents.

On appeal, we rejected Good Neighbor's claims that (1) the EIR was required to analyze an alternative to the development plan that would limit student enrollment, (2) the EIR improperly

2

restricted the geographic scope of the plan to the campus and nearby properties (piecemealing, in CEQA parlance), and (3) the EIR failed to adequately assess and mitigate impacts from population growth and displacement of existing residents. (*Make UC I, supra*, 88 Cal.App.5th at p. 665.) We agreed with Good Neighbor, however, on two issues: (1) in light of evidence in the record of loud student parties in neighboring residential areas, which the Regents conceded was an existing problem (*id.* at p. 686), the EIR should have assessed potential noise impacts from the Regent's plan to add thousands more students to those same areas, and (2) the EIR failed to consider alternative locations to the People's Park project or explain its decision not to do so. (*Id.* at pp. 665, 676–677, 685-686, superseded by statute and reversed by *Make UC II, supra,* 16 Cal.5th at pp. 48-49, 60-61, 64-66; *Make UC II,* at pp. 52-53.)

Both Good Neighbor and the Regents petitioned for review of different aspects of our decision. Our Supreme Court denied Good Neighbor's petition, which sought review of our holding on the lower enrollment alternative. (*Make UC II, supra*, 16 Cal.5th at p. 53.) However, the court granted the Regents' petition on the two issues on which Good Neighbor had prevailed: crowd noise from student parties and alternative locations for the housing project.[2] (*Make UC II,* at p. 53.)

---

[2] In granting the Regents' petition for review, the Supreme Court ordered, pursuant to California Rules of Court, rule 8.1115(e)(3), that pending review our *Make UC I* opinion could "be cited, not only for its persuasive value, but also for the limited purpose of establishing the existence of a conflict in authority that would in turn allow trial courts to exercise discretion under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456 . . . , to choose between sides of any such conflict." Undesignated rule references are to the California Rules of Court.

3

After the court granted review, the Legislature passed Assembly Bill No. 1307 (2023–2024 Reg. Sess.) as urgency legislation, addressing both issues that the court agreed to review. (*Make UC II, supra*, 16 Cal.5th at pp. 48-49, 53; see Stats. 2023, ch. 160, §§ 1-3, eff. Sept. 7, 2023.)

First, under Public Resources Code section 21085, "the effects of noise generated by project occupants [of residential projects] and their guests on human beings is not a significant effect on the environment" for purposes of CEQA. Notably, the legislation is limited to residential projects, but it covers a wider range of noise than the loud parties at issue in *Make UC I* and in a prior case involving similar noise at a wedding venue. (See Pub. Resources Code, § 21085; *Make UC I, supra,* 88 Cal.App.5th at p. 685; *Keep Our Mountains Quiet v. County of Santa Clara* (2015) 236 Cal.App.4th 714, 732-734.) The legislative history explains that the statute is intended to prevent future litigants from " 'challeng[ing] residential development based on the speculation that the new residents will create unwanted noises.' " (*Make UC II, supra*, 16 Cal.5th at p. 60, quoting Sen. Com. on Environmental Quality, Analysis of Assem. Bill No. 1307 (2023–2024 Reg. Sess.) as amended May 18, 2023, p. 3.)

Second, the Legislature also provided that "institutions of public higher education shall not be required, in an environmental impact report prepared for a residential or mixed-use housing project, to consider alternatives to the location" of the proposed project if certain requirements are met. (Pub. Resources Code, § 21085.2, subd. (b).)

In *Make UC II, supra,* 16 Cal.5th at pages 49, 64-66, the Supreme Court concluded the new legislation required reversal of our judgment in *Make UC I, supra,* 88 Cal.App.5th 656 on those two issues. First, the court reversed our ruling that the EIR improperly failed to assess potential crowd noise impacts from student parties in residential neighborhoods. (*Make UC II,* at p.

4

64.) The court observed the legislative history of Assembly Bill No. 1307 "overwhelmingly establishes that the Legislature enacted the new law to abrogate" the *Make UC I* opinion. (*Make UC II,* at p. 60.) After finding Public Resources Code section 21085 "directly contrary" to *Make UC I*, the court held the EIR was "not inadequate for having failed to study the potential noisiness of future students." (*Make UC II,* at pp. 49, 61, 64.)

Second, relying on Public Resources Code section 21085.2 and Good Neighbor's concession that the People's Park project met the statutory criteria, the court found the EIR was "not inadequate for having failed to consider alternative locations for [the People's Park] project" and reversed our ruling to the contrary. (*Make UC II*, *supra*, 16 Cal.5th at pp. 65-66.) The court directed us to "remand the case to the trial court to enter a judgment on the merits of Good Neighbor's writ petition in favor of [the Regents]." (*Ibid.*)

## B.

On remand, the trial court entered judgment in the Regents' favor. Good Neighbor moved for an award of attorney fees (totaling $1,166,097.88) from the Regents, pursuant to section 1021.5, arguing that it was a successful party because, with respect to *nonresidential* projects, *Make UC I*'s rulings on social noise and location alternatives purportedly "remain good law" because they are not inconsistent with the Supreme Court's decision. (See rule 8.1115(e)(2) [governing citation to published opinions "[a]fter decision on review"].)

The trial court denied Good Neighbor's fees motion because it was not successful on any aspect of its claims. The court explained: "[Good Neighbor] did not receive a favorable judgment, [it] did not vindicate the principles on which [it] brought [its] action, nor did [it] achieve [its] strategic objectives of overturning the [People's Park] Project's approval and halting the construction of the [People's Park] Project until additional

5

environmental assessments were performed.  On the contrary, the result of [Good Neighbor's] petition was a legislative declaration and Supreme Court ruling that specifically establish that [the Regents] do not have to analyze the effects of the potential environmental impact of social noise on residential projects or include an analysis of alternative project locations in residential projects – the exact opposite of what [Good Neighbor] intended."

## DISCUSSION

Good Neighbor argues that it is a "successful party" within the meaning of section 1021.5.  We review the trial court's order for abuse of discretion.  (*Grossmont Union High School Dist. v. Diego Plus Education Corp.* (2023) 98 Cal.App.5th 552, 573-574; *Ebbetts Pass Forest Watch v. Department of Forestry & Fire Protection* (2010) 187 Cal.App.4th 376, 381 (*Ebbetts Pass*).)  We find no abuse of discretion here.

### A.

Section 1021.5 codifies the " 'private attorney general' " doctrine, an exception to the general rule that parties to litigation pay their own attorney fees.  (*La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles* (2018) 22 Cal.App.5th 1149, 1155-1156; § 1033.5, subd. (a)(10).)  "[T]he fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases."  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1289 (*Maria P.*).)

To obtain an attorney fee award under section 1021.5, the movant (in a case involving no recovery) must establish that (1) it is "a successful party" in an action; (2) the action resulted in the enforcement of an important right affecting the public interest; (3) the action conferred a significant benefit on the general public or a large class of persons; and (4) the necessity and financial

6

burden of private enforcement (or enforcement by one public entity against another) make an award appropriate. (§ 1021.5; *Vasquez v. State of California, supra*, 45 Cal.4th at pp. 250-251; *McCormick v. Public Employees' Retirement System* (2023) 90 Cal.App.5th 996, 1003-1004.)

This case turns on the threshold requirement—success. The successful party is "the party to litigation that achieves its objectives." (*Graham v. DaimlerChrysler Corp*. (2004) 34 Cal.4th 553, 571 [catalyst case]; accord, *Harbor v. Deukmejian* (1987) 43 Cal.3d 1078, 1103 [successful party is the one who "vindicate[s] the principle upon which [it] brought th[e] action"].) The inquiry is both "pragmatic" and "broad." (*Graham*, at p. 565.) To be successful, a party need not obtain a favorable final judgment (*ibid*.; *Maria P., supra,* 43 Cal.3d at pp. 1290–1291) nor succeed on all its claims. (*City of Oakland v. Oakland Police & Fire Retirement System* (2018) 29 Cal.App.5th 688, 708.) "[T]he critical fact is the impact of the action. [Citation.] [Parties] may be considered successful if they succeed on *any significant issue* in the litigation that achieves some of the *benefit they sought* in bringing suit." (*Ebbetts Pass, supra,* 187 Cal.App.4th at pp. 381-382, italics added; accord, *Maria P.,* at p. 1292.)

## B.

Good Neighbor argues that it successfully established important new precedent on noise and location alternatives in our *Make UC I* opinion and that "portions" of those analyses "remain good law" even after the Supreme Court reversed in *Make UC II*. The Regents, on the other hand, claim that nothing in our *Make UC I* opinion is good law—even as to the three issues that the Supreme Court did not review. Neither party is correct.

Prior to 2016, published court of appeal opinions were automatically depublished on grant of review by the Supreme Court. (See former rule 8.1105(e)(1); *People v. Trevino* (2016) 1

7

Cal.App.5th 120, 125, fn. 6 [noting precedential value of court of appeal's opinion was eradicated, under former rule 8.1105(e)(1), when Supreme Court granted review].) Under the new rule, on grant of review, the court of appeal decision remains published unless the Supreme Court orders otherwise. (Rule 8.1105(e).) Once the Supreme Court issues a decision in the case, rule 8.1115(e)(2) governs its status: "[U]nless otherwise ordered by the Supreme Court under (3), a published opinion of a Court of Appeal in the matter . . . is citable and has binding or precedential effect, *except to the extent it is inconsistent with* the decision of the Supreme Court *or is disapproved* by that court." (Italics added; see also, rule 8.1115(e)(3) [permitting Supreme Court to order decision uncitable or change its binding or precedential effect].) The question here is whether the Supreme Court's opinion in *Make UC II* is inconsistent with, or disapproved, the relevant parts of our opinion in *Make UC I*. If not, it remains citable, binding precedent.

Good Neighbor argues that the Supreme Court did not expressly "disapprove" or say anything "inconsistent with" our analyses of either the noise or location alternatives issues because the court never reached the merits of our analyses. Instead, it reversed because the Legislature narrowed CEQA with respect to noise and project location, eliminating the statute's application to the residential projects at issue in the case. According to Good Neighbor, our analyses remain good law as applied to future cases involving *non*residential projects.

This is not a plausible interpretation of rule 8.1115. The plain meaning of "disapprove" is "to pass unfavorable judgment on" or "to refuse approval." (Merriam-Webster Dict. Online (2025) <https://www.merriam-webster.com/dictionary/disapproved> [as of Dec. 19, 2025].) After granting review on two of the issues we decided in *Make UC I*, the Supreme Court reversed on both. (*Make UC II, supra*, 16

8

Cal.5th at pp. 53, 64-66.) The court determined that the Legislature amended CEQA specifically to abrogate our decision on these two issues. (*Make UC II,* at p. 60.) As a result, contrary to our opinion, the Regents' EIR (and that of any future lead agency faced with the same issues) complies with CEQA. (*Id.* at pp. 64-65.) The court's disposition tersely states: "We *reverse* the judgment of the Court of Appeal in favor of Good Neighbor and . . . remand the matter . . . with directions to remand the case to the trial court to enter a judgment on the merits of Good Neighbor's writ petition *in favor of* [*the Regents*]." (*Id.* at pp. 65-66, italics added.) This is unambiguous disapproval.

The fact that the court did not reach the merits of our analyses is inapposite. Having determined that the decision should be reversed because of new legislation, the court was not required to further signal its disapproval by adding a gratuitous, advisory discussion of the law that existed prior to the change. Indeed, Good Neighbor's interpretation of the rule would lead to chaos. Nearly all Supreme Court reversals would prompt arguments and uncertainty in the lower courts about exactly what parts of the reversed decision remain good law. (Cf. *Auto Equity Sales, Inc. v. Superior Court, supra,* 57 Cal.2d at p. 455 ["[u]nder the doctrine of *stare decisis*, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction"]; rule 8.1115(e)(2).)

Likewise, the fact that *Make UC II* is limited to residential projects is irrelevant. Having been abrogated by statute and reversed by our Supreme Court, *Make UC I's* analyses of noise and project location—including its holdings, reasoning, and dicta—are smoldering ruins, not citable precedent.[3] (See 9

---

[3] In any case, we are also unpersuaded that, regardless of how rule 8.1115 is construed, any dicta in our decision concerning nonresidential projects could be regarded as important precedent. Other courts have applied CEQA to crowd noise from

9

Witkin, Cal. Procedure (6th ed. 2025) Appeal, § 898 ["effect of an unqualified reversal ('the judgment is reversed') is to vacate the judgment, and to leave the case 'at large' for further proceedings as if . . . no judgment had ever been rendered"].)

This does not mean, as the Regents suggest, that *Make UC I* is not citable or precedential on any point whatsoever. As noted, the Supreme Court did not review several CEQA issues on which the Regents prevailed in *Make UC I*—i.e., the lower enrollment alternative, piecemealing, and displacement. (See *Make UC II, supra,* 16 Cal.5th at p. 53; *Make UC I, supra,* 88 Cal.App.5th at pp. 665, 668, 683-685, 690-695, reversed on other grounds by *Make UC II,* at pp. 64-66.) Nothing in *Make UC II* is inconsistent with, disapproves, or undercuts in any way those parts of our opinion. Under the plain language of rule 8.1115(e)(2), those parts of *Make UC I* remain good law; the decision was reversed on other grounds. (See rule 8.1115(e)(2) & Advisory Com. com., Cal. Rules of Court, rule 8.1115 ["[t]he fact that a Supreme Court decision does not discuss an issue addressed in the prior Court of Appeal decision does not constitute an expression of the Supreme Court's opinion concerning the correctness of the decision on that issue or of any law stated in the Court of Appeal decision with respect to any such issue"]; see also Cal. Style Manual (4th ed. 2000) § 1:11.)

In short, the trial court did not abuse its discretion in determining that Good Neighbor is not a successful party. (See *Ebbetts Pass, supra,* 187 Cal.App.4th at pp. 381-382, 388.) Our *Make UC I* opinion has no precedential value with respect to the two issues on which our Supreme Court granted review and reversed. (See rule 8.1115(e)(2).) Those are the only two issues on which Good Neighbor claims success. Good Neighbor did not

nonresidential projects. (See, e.g., *Keep Our Mountains Quiet v. County of Santa Clara, supra,* 236 Cal.App.4th at pp. 732-734 [wedding venue].)

10

receive a favorable judgment, vindicate the principles on which it brought its action, or achieve its strategic objectives of overturning the projects' approval and requiring additional environmental review.  (See *Make UC II, supra*, 16 Cal.5th at pp. 48-49, 53, 65-66; *Make UC I, supra*, 88 Cal.App.5th at p. 665.)  Instead, as the trial court observed, Good Neighbor's petition resulted in legislation and a Supreme Court ruling that allowed the Regents to proceed with their project without any further CEQA compliance—"the exact opposite of what [Good Neighbor] intended."  We need not consider the parties' additional arguments.

## DISPOSITION

The order denying attorney fees is affirmed.  The Regents are entitled to their costs on appeal.  (Rule 8.278(a)(1), (2).)

BURNS, J.

WE CONCUR:

JACKSON, P.J.
SIMONS, J.

*Make UC a Good Neighbor et al. v. Regents of University of California et al.* (A172510)

11

Superior Court of Alameda County, No. RG21110142, The Hon. Sarah Sanford-Smith, Judge.

Law Offices of Thomas N. Lippe, Thomas N. Lippe, for Plaintiffs and Appellants.

Office of The General Counsel University of California, Charles F. Robinson and Alison L. Krumbein; Meyers Nave, Margaret M. Sohagi, Nicole H. Gordon and Mark J.G. Desrosiers, for Defendants and Respondents.